

**ORDERED in the Southern District of Florida on February 17, 2010.**

_____
**A. Jay Cristol, Judge**
**United States Bankruptcy Court**

_____

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
www.flsb.uscourts.gov

In re:                                          Chapter 11

AMERICA CAPITAL                                 Case No. 06-12645-BKC-AJC
CORPORATION
        Debtor.
_____/

ESTATE OF SAMUEL ADLER, JACK
D. BURNSTEIN, ESTATE OF HAROLD
BROWN, ROBERTO DUENAS,
ROBERT TURCHIN, ESTATE OF
ROBERT SANDERS, and HARVEY
TOLIN,

        Plaintiffs,

vs.                                             Adv. No. 09-01255-BKC-AJC

SUNTRUST BANK, N.A. as indenture
trustee for that certain $80,000,000 issue
of American Capital Corporation 8.40%
Subordinated Notes due 1993,

        Defendant.
_____/

## OPINION AND ORDER GRANTING MOTION OF DEFENDANT
## SUNTRUST BANK TO DISMISS ADVERSARY COMPLAINT

THIS MATTER came before the Court for hearing on June 30, 2009, upon the Motion to Dismiss [DE # 12] (the **"Motion"**) the First Amended Complaint for Declaratory Judgment that Plaintiffs are Holders of Senior Indebtedness Under Confirmed Plan of Reorganization [DE # 11] (the **"Amended Complaint"**) of plaintiffs Estate of Samuel Adler, Jack D. Burnstein, Estate of Harold Brown, Roberto Duenas, Robert Turchin, Estate of Robert Sanders, and Harvey Tolin (collectively, **"Plaintiffs"**), filed by Defendant SunTrust Bank (**"SunTrust"**) pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, as incorporated into Rule 7012 of the Federal Rules of Bankruptcy Procedure, and the Plaintiffs' Response [DE # 24] (the **"Response"**) to the Motion.  The Court having considered the Amended Complaint, the Motion, the Response, the arguments of counsel, and otherwise being advised in the premises determines that for the reasons set forth hereinafter the Amended Complaint must be dismissed in its entirety for failure to state a claim upon which relief can be granted.

## BACKGROUND

By way of the Amended Complaint, the Plaintiffs, who are insiders of the Debtor American Capital Corporation (**"ACC"**), seek to elevate their claims for more than $1 million (with interest), relating to an alleged "guarantee fee" on a $3.5 million loan, ahead of the non-insider Noteholders owed in excess of $230 million, notwithstanding Plaintiffs' explicit acknowledgement (a) that the loan they guaranteed (and subsequently purchased) was paid in full by ACC, and (b) that the guarantees were never called, and all collateral was released upon full payment of the loan.  The insider Plaintiffs assert as a legal conclusion in the Amended Complaint that their guarantee fee claims constitute "Senior Indebtedness" as defined in the

2

Indenture,[1] at the same time as the facts alleged in the Amended Complaint and the exhibits thereto demonstrate that the guaranty fees are not an "indebtedness" for (i) "for borrowed money," (ii) "evidenced by notes, bonds, or indentures of the Company issued under the provisions of an indenture or similar instrument," or (iii) "in connection with the acquisition by the Company or a Subsidiary of a business, real  property or other assets other than in the ordinary course of business . . ." as required by the definition set forth in the Indenture.

Count II of the Amended Complaint alleges that SunTrust violated rights of the Plaintiffs with respect to the $3.5 million loan purchased by them and the insider "fee guarantees."

Count III is a new claim asserted in the Amended Complaint, seeking to establish a director fee in favor of Plaintiff Duenas as "Senior Indebtedness."  This claim was not asserted until April 10, 2009, nearly one month after the March 16, 2009 Plan deadline for asserting any claim for Senior Indebtedness, and is thus barred under the terms of the confirmed Plan and the *res judicata* effect in connection therewith as set forth in more detail below.

## ALLEGATIONS OF THE COMPLAINT

Plaintiffs are and at all relevant times were insiders of ACC.  Adv. Comp. ¶ 11.  On or about December 11, 1987, Sun Bank Miami, N.A. (alleged in the Amended Complaint to be a predecessor entity to SunTrust, hereinafter referred to as SunTrust) entered into a loan agreement (the **"Loan"**) with ACC through which SunTrust agreed to loan ACC an amount up to $3,500,000.  Adv. Comp. ¶ 10.  At the time the Loan was executed, no guarantees were required or provided.  Adv. Comp. ¶ 10.

Subsequently, in or about 1989, ACC began experiencing financial difficulties, which prompted SunTrust to require a guarantee with respect to the Loan.  Adv. Comp. ¶ 11.  The Plaintiffs, who were insiders at the time, were proposed as guarantors.   Adv. Comp. ¶ 11.

---

[1]  Capitalized terms used and not otherwise defined herein shall have the meaning set forth in the Complaint.

SunTrust accepted the Plaintiffs as guarantors and on April 27, 1990, SunTrust, ACC and the Plaintiffs entered into a modification agreement with respect to the Loan, which conditioned the Loan on the guarantees provided by Plaintiffs.  Adv. Comp. ¶ 12.

At or around this time, ACC agreed to pay the insider Plaintiffs a guarantee fee in the amount of $96,000 plus interest for providing the guarantees in connection with the Loan.  Adv. Comp. ¶ 13.  The Loan became due on January 31, 1992, at which time the Loan was extended based in part on the Plaintiffs extending their guarantees.  Adv. Comp. ¶ 14.  ACC again paid the insider Plaintiffs a guarantee fee for extending their guarantees.  Adv. Comp. ¶ 14.  The second guarantee fee totaled $141,600 plus interest.  Adv. Comp. ¶ 14.

The Loan became due on February 1, 1993, at which time ACC was unable to make payment under the Loan.  Adv. Comp. ¶ 15.  On March 26, 1993, SunTrust issued a Notice of Default.  Adv. Comp. ¶ 15.  In April, 1993, the Plaintiffs purchased the Loan from SunTrust.  Adv. Comp. ¶ 16.  Since that time, the Loan has been paid.  Adv. Comp. ¶ 16.

"Unrelated to the Loan," SunTrust serves as Indenture Trustee for that certain $80,000,000 issue of ACC 8.40% Subordinated Notes due 1993.  Adv. Comp. ¶ 17.  On or around December, 1989, ACC stopped making payments under the Indenture.  Adv. Comp. ¶ 18.  Subsequently, in 1997, SunTrust commenced an action and obtained a judgment against ACC in the Eleventh Judicial Circuit Court, Miami-Dade County, Florida, Case no. 97-5477 CA-27.  Adv. Comp. ¶ 19.  The judgment, entered on March 5, 1998 against ACC is in the principal amount of $78,502,000, plus accrued interest of $53,458,586.48, for a total of $131,960,586.65 Adv. Comp. ¶ 20 (the **"SunTrust Indenture Judgment"**).

On March 16, 2009, Plaintiffs filed their Complaint for Declaratory Judgment that Plaintiffs are Holders of Senior Indebtedness Under Confirmed Plan of Reorganization (DE # 1)

(the **"Original Complaint"**).  The Original Complaint contained only Counts I and II.  Count III was subsequently added to the Amended Complaint filed on April 10, 2009, and asserted a new claim based upon an alleged director fee owed to Plaintiff Duenas that was not asserted in the Original Complaint.

## CONCLUSIONS OF LAW

## I.    LEGAL STANDARD FOR MOTION TO DISMISS

"When the allegations of the complaint, however true, could not raise a claim for entitlement to relief, this basic deficiency should be exposed at the point of minimum expenditure of time and money by the parties and the court."  *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1966 (2007).  Under this standard, a plaintiff's obligation to provide the grounds for entitlement to relief "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation, [and] [a] pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do."  *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009); *see also Twombly*, 127 S.Ct. at 1964-65; *Smith v. Under Armour, Inc.*, Case No. 08-22835-CIV, 2008 WL 5486764, at *1 (S.D. Fla. Dec. 18, 2008); *Indulgence Yacht Charters, Ltd. v. Ardell, Inc.*, Case No. 08-60739, 2008 WL 4346749, at *4 (S.D. Fla. Sep. 16, 2008).  Hence, "a complaint's factual allegations must be enough to raise a right to relief above a speculative level," and "[will not] suffice if it tenders naked assertions devoid of further factual enhancement."  *Ashcroft*, 129 S.Ct. at 1949; *Twombly*, 127 S.Ct. at 1965; *see also Davis v. Coca-Cola Bottling Co. Consol.*, 516 F.3d 955, 974 (11th Cir. 2008); *Smith*, 2008 WL 5486764, at *1; *Indulgence Yacht Charters*, 2008 WL 4346749, at *4.  It thus follows that dismissal of a complaint is warranted under Rule 12(b)(6) "when, on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action."  *Glover v. Liggett Group*,

*Inc.*, 459 F. 3d 1304, 1308 (11th Cir. 2006); *Marshall County Bd. of Educ. v. Marshall County Gas Dist.*, 992 F. 2d 1171, 1174 (11th Cir. 1993).

Although the well-pled factual allegations in a complaint are to be accepted as true, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Ashcroft*, 129 S.Ct. at 1949; *Twombly*, 127 S.Ct. at 1955.  And, while reasonable inferences may be drawn in favor of the plaintiff, "the Court is neither required nor expected to engage in unfounded speculation as to the existence or non-existence of all possible facts that might allow the complaint to proceed further."  *Henry v. Robey-Barber Ins. Services Corp.*, 777 F. Supp. 1554, 1555 (M.D. Fla. 1991).

For purposes of a motion to dismiss, the terms of the documents sued upon and referenced in the complaint are controlling and must be considered over any contradictory allegations in the complaint or any other filing or submission.  *Indulgence Yacht Charters, Ltd. v. Ardell, Inc.*, Case No. 08-60739, 2008 WL 4346749, at *4 (S.D. Fla. Sep. 16, 2008).  Thus, "[c]onclusory allegations and unwarranted deductions of fact are not admitted as true, especially when such conclusions are contradicted by facts disclosed by a document appended to the complaint [which if it] reveals facts which foreclose recovery as a matter of law, dismissal is appropriate."  *Pedraza v. Coca-Cola Co.*, 456 F. Supp. 2d 1262, 1269 (N.D. Ga. 2006).

Finally, while the court is typically limited to consideration of the contents within the four corners of a complaint when considering a motion to dismiss, "a document need not be physically attached to a [complaint] to be incorporated by reference into it; if the documents contents are alleged in a complaint and no party questions those contents, [a court] may consider such a document" when deciding upon a motion to dismiss.  *Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005).

## II.  COUNT I OF THE ADVERSARY COMPLAINT FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED

Plaintiffs seek a declaratory judgment in Count I of the Amended Complaint by which they request the Court to declare that Plaintiffs' Guarantee claims "are senior in priority and dignity to the SunTrust Indenture Judgment and are entitled to all distributions under the Plan of Reorganization in this case prior to any distributions on the SunTrust Indenture Judgment…" Adv. Comp. ¶31.  Paragraphs 24 through 26 of the Amended Complaint set out and define the relevant portions of the Indenture, including the subordination provisions of Section 3.01 and the definition of "Senior Indebtedness," as set forth in Section 1.01 of the Indenture.

These definitions and provisions are followed by the request for relief that the Guarantor Notes are senior in priority and dignity to the SunTrust Indenture Judgment.  Plaintiffs generally assert that their claims constitute Senior Indebtedness.  As set forth in paragraph 26 of the Amended Complaint, Senior Indebtedness is defined as follows in the Indenture:

> The terms "Senior Indebtedness" shall mean the principal of, and premium, if any, and interest on (a) indebtedness (other than the Notes), whether or not secured and whether heretofore or hereafter incurred, (i) for borrowed money, (ii) evidenced by notes, bonds, or debentures of the Company issued under the provisions of an indenture or similar instrument or (iii) in connection with the acquisition by the Company or a Subsidiary of a business, real property or other assets other than in the ordinary course of business, in either case for the payment of which the Company is liable directly or indirectly by guarantee, letter of credit, obligation to purchase or acquire or otherwise, or the payment of which is secured by a lien, charge or encumbrance on assets acquired by the Company or a Subsidiary, unless the terms of the instrument evidencing such indebtedness or pursuant to which such indebtedness is issued provide that such indebtedness (x) is not superior in right of payment to the Notes, or (y) is subordinate to indebtedness of the same nature as the Notes, (b) amendments, modifications, renewals, extensions or deferrals of any such indebtedness and (c) indebtedness issued in exchange for any indebtedness described in clause (a) or clause (b).

Indenture at Section 1.01.  Here, even when examining the facts in a light most favorable to the Plaintiffs and notwithstanding the arguments set forth in the Response, Plaintiffs' guaranty fee claims do not constitute Senior Indebtedness under any provision of this definition.

      1.      **Guaranty fees are not "indebtedness . . . for borrowed money"**

First, Section 1.01(a)(i) of the Indenture defines Senior Indebtedness as "indebtedness…for borrowed money."  However, the Amended Complaint fails to allege that there existed a borrowing event between the Plaintiffs and the Debtor.  Accepting all the factual allegations set forth in the Amended Complaint as true and examining the exhibits and other documents referenced within and therefore incorporated into the Amended Complaint, Plaintiffs have failed to demonstrate the elements necessary for their claims to be considered Senior Indebtedness.  The "guarantee fee" does not represent any money loaned by Plaintiffs to ACC, but is rather an amount ACC agreed to pay the insider Plaintiffs for making a guarantee.

The insider Plaintiffs did not loan any money to ACC, and it is clear from the allegations of the Amended Complaint that ACC never borrowed any money from Plaintiffs.  For example, paragraph 13 of the Amended Complaint states that "[i]n order to induce the [Plaintiffs] to provide personal collateral to further secure the ACC Loan, ACC agreed to provide [Plaintiffs] with a guarantee fee…"  Similarly, paragraph 14 of the Amended Complaint states that "[i]n order to induce the [Plaintiffs] to extend their personal guarantees…the [Plaintiffs] entered into [an agreement] which provided…for an additional guarantee fee of $141,600…"  The allegations therefore make clear that ACC did not "borrow money" from Plaintiffs.

The Plaintiffs' argument set forth in the Response that "the Debtor's loan from SunTrust was conditioned upon the issuance of the Plaintiffs' guarantees" in support of the proposition that the guarantee fees constitute "indebtedness for borrowed money" is without merit.  There is

no allegation by the Plaintiffs of a borrowing event between the insider Plaintiffs and the Debtor.

Moreover, the insider "guarantee fees" were not incurred until nearly 3 ½  years after the loan

from Sun Bank was made.   For these reasons, the claims of the Plaintiffs cannot constitute

"indebtedness for borrowed money" under the Indenture.

> 2.      **Guaranty fees are not "evidenced by notes, bonds, or debentures . . . issued under the provisions of an indenture or similar instrument."**

With respect to Section 1.01(a)(ii), the guaranty fee claims held by Plaintiffs do not fall

within the ambit of subsection (a)(ii) since they are not indebtedness "evidenced by notes, bonds,

or debentures…issued under the provisions of an indenture or similar instrument."   Plaintiffs do

not allege any facts showing that the insider guaranty fee claims were issued under the

provisions of an indenture or similar instrument.   There is nothing alleged in the Complaint that

constitutes a "similar instrument" to an indenture.   Rather, the allegations and exhibits to the

Amended Complaint establish that the guaranty fees are payments that ACC agreed to pay the

insider Plaintiffs in consideration for providing the guarantees.   Plaintiffs argue in the Response

that certain agreements referenced in the paragraphs 12 and 14 of the Amended Complaint -

including an Indemnification/Reimbursement Agreement dated February 21, 1990 - constitute an

instrument similar to an indenture.   However, the Court disagrees and the Amended Complaint

fails to explain how or why the alleged agreements are similar to an indenture, as required by the

definition of Senior Indebtedness.

The phrase "indenture or similar instrument" can be understood by reference to the Trust

Indenture Act of 1939.   15 U.S.C. § 77ccc(7).   The Indenture at issue in this case closely tracks

the Trust Indenture Act, as is evidenced by the table on pages i and ii of the Indenture,

"Reconciliation and Tie Between Trust Indenture Act of 1939 and Indenture, dated as of June 15,

1985."[2]   The Trust Indenture Act, in turn, provides: "There shall at all times be one or more trustees under every indenture qualified or to be qualified pursuant to this title."  Consistent with this requirement, Black's Law Dictionary defines a "trust indenture" as a "document containing the terms and conditions governing a trustee's conduct and the trust beneficiaries' rights." *Black's Law Dictionary* 784-85 (8th ed. 2004).  Plaintiffs have failed to allege the existence of any instrument under which the guaranty fee notes were issued that are in any way similar to a trust indenture, as such term is commonly understood for purposes of the Trust Indenture Act. Plaintiffs have not alleged that there is any instrument pursuant to which a trustee has been appointed to administer the guaranty fee notes, or that describe the rights and duties of any such trustee and the beneficiaries.

In addition, the Trust Indenture Act defines an "indenture" as follows:

> (7)  The term "indenture" means any mortgage, deed of trust, trust or other indenture, or similar instrument or agreement (including any supplement or amendment to any of the foregoing), *under which securities are outstanding or are to be issued,* whether or not any property, real or personal, is, or is to be, pledged, mortgaged, assigned, or conveyed thereunder.

15 U.S.C. § 77ccc(7) (emphasis added).  One characteristic that determines an "indenture or similar instrument" is that *securities are issued* under such instrument.  Corporate debt securities may not be offered for sale to the public unless they are issued under an indenture, and the indenture conforms to the statutory standards of the Trust Indenture Act of 1939.  Furthermore, debt securities issued under such an indenture must be registered in accordance with the Securities Act of 1933 C.C.H. 1 Federal Securities Law Reporter ¶ 205-13 (1970).  The registration statement or prospectus may include brief descriptions of the indenture provisions. C.C.H. 1 Federal Securities Law Reporter ¶ 207 (1970).

---

[2]        A complete copy of the Indenture is attached as Exhibit A to the Rule 2019 Statement [D.E. # 50] filed by SunTrust Bank in the main bankruptcy case, Case No. 06-12645-BKC-AJC.

For purposes of the securities laws, the test of whether an instrument constitutes a "security" contains three elements: (1) the investment of money, (2) a common enterprise, and (3) profits or returns from the efforts of others.  *Securities & Exchange Commission v. W. J. Howey Co.,* 328 U.S. 293 (1946); *Moody v. Bache & Co.*, 570 F.2d 523, 525 (5th Cir. 1978); *Securities & Exchange v. Koscot Interplanetary, Inc.,* 497 F.2d 473, 477 (5th Cir. 1974).  For the reasons stated above, the guaranty fee notes attached to the Amended Complaint in this case do not involve the investment of money by any of the insider Plaintiffs, and thus are not "securities" for purposes of the securities laws.

For the reasons stated above, the Amended Complaint and exhibits attached thereto indicate that the guaranty fee claims are not indebtedness "evidenced by notes, bonds, or debentures…issued under the provisions of an indenture or similar instrument." This is so both because the promissory notes are not securities for purposes of the securities laws, and because there is no allegation or mention of a resolution, ordinance or any other document similar to a trust indenture under which securities are typically issued.

3.      **Guaranty fees do not constitute "acquisition" indebtedness**

Similarly, the Plaintiffs' alleged claims do not constitute "acquisition" indebtedness as set forth in subsection (a)(iii) of the definition of Senior Indebtedness.  Simply put, the Plaintiffs fail to allege that the insider guaranty fee claims were incurred in connection with an acquisition. Rather, as set forth above, the facts alleged in the Amended Complaint establish that the guaranty fees are payments that ACC agreed to pay the insider Plaintiffs in consideration for providing the guarantees.

Through their Response, Plaintiffs point to allegations set forth in paragraph 10 of the Amended Complaint that the indebtedness to Sun Bank "was incurred in connection with the

purchase and development of real property or other business assets…"  However, the indebtedness to Sun Bank under the 1987 loan is not what is at issue here.  To the contrary, the issue is whether the guarantees fees incurred by ACC in favor of the Plaintiffs in 1991 and 1992, were incurred in connection with an acquisition by ACC, and there are no allegations in the Complaint to suggest that any acquisition took place in connection with the guaranty fee indebtedness.  As noted above, the Amended Complaint makes clear that there was no new money loaned by the insider guarantors to ACC.  As a result, the guaranty fee claims also fail to constitute Senior Indebtedness under subsection (a)(iii) of the definition of Senior Indebtedness.

### III.    COUNT II IS DISMISSED FOR LACK OF SUBJECT MATTER JURISDICTION

The scope of bankruptcy jurisdiction is set forth in 28 U.S.C. § 1334, which provides that district courts shall have "original and exclusive" jurisdiction of "all cases under title 11" §1334(a), and "original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11," §1334(b).  Pursuant to 28 U.S.C. § 157, the district courts may refer bankruptcy jurisdiction to bankruptcy courts: "Each district court may provide that any or all cases under title 11 and any and all proceedings arising under title 11 shall be referred to the bankruptcy judges for the district."  28 U.S.C. § 157(a).

The Plaintiffs' claim for tortious interference with contract set forth in Count II of the Amended Complaint does not "arise under" under title 11, because it derives from state tort law rather than federal bankruptcy law.  Nor does Count II "arise in" the title 11 case because the Plaintiffs could certainly bring this claim in state court, outside the context of the bankruptcy case.  If Count II is within this Court's jurisdiction at all, such jurisdiction would need to be premised upon "related to" jurisdiction established by Section 1334(b).

The test most frequently used by courts in the Eleventh Circuit to determine whether litigation falls within the jurisdictional grant of Section 1334(b) is the generally adopted standard set out by the Third Circuit as follows:

> [T]he test for determining whether a civil proceeding is related to bankruptcy is whether the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy . . . . Thus, the proceeding need not necessarily be against the debtor or against the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankruptcy estate.

*Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3d Cir. 1984).  The Eleventh Circuit has recognized and adopted the *Pacor* test in *Miller v. Kemira, Inc. (Matter of Lemco Gypsum, Inc.)*, 910 F.2d 784, 788 (11th Cir. 1990) ("We join the majority of the circuits that have adopted the *Pacor* formulation").  One court noted, in applying the *Pacor* test, that "[a]t best, our jurisdiction to adjudicate between two non-debtors is tenuous…In the absence of any tangible effect on the bankruptcy case, bankruptcy courts have regularly concluded that they lack jurisdiction to resolve claims by non-debtors against other non-debtors."  *In re C.A.C. Jewelry, Inc.*, 124 B.R. 419, 422 (Bankr. D. R.I. 1991); *See also In re Murray Industries, Inc.*, 204 B.R. 74, 77 (Bankr. M.D. Fla. 1995).

Here, the Plaintiffs seek in Count II to recover *personally* on state law claims for tortious interference against SunTrust.  Thus, any recovery by the Plaintiffs "would not inure to the benefit of the estate or its creditors."  *C.A.C. Jewelry*, 124 B.R. at 422.  Moreover, the resolution of the Count II dispute between the Plaintiffs and SunTrust would not create any rights or liabilities with respect to the Plan or the administration of the estate.

This Court is without subject matter jurisdiction for Count II of the Amended Complaint asserts "ordinary," state-based, common law claims.  Count II does not require interpretation or

application of the Debtor's confirmed Plan, and reference to the Plan and related documents will be unnecessary to resolve the tortious interference claim.

Contrary to the assertions by Plaintiffs in the Response, section 4.03 of the Debtor's Plan provided for the resolution of any Senior Indebtedness Subordination Proceeding, by the filing of "a timely adversary proceeding by any alleged holders of Senior Indebtedness seeking to enforce any contractual subordination clause under Section 510(a)." Count I of the Amended Complaint is an example of such a Senior Indebtedness Subordination Proceeding. By contrast, Count II is not a Senior Indebtedness Subordination Proceeding.

In sum, Count II of this Adversary Proceeding is a state law claim by the non-debtor Plaintiffs against non-debtor SunTrust seeking to recover damages, and will not have any effect upon the estate being administered in bankruptcy. Moreover, Count II involves alleged conduct that is collateral to the terms of the Debtor's confirmed and consummated Plan. Accordingly, the Court lacks subject matter jurisdiction and dismisses Count II of the Amended Complaint.

## IV.    COUNT III IS DISMISSED AND DISALLOWED AS UNTIMELY

Count III of the Amended Complaint must be dismissed and disallowed as untimely under the Debtor's First Amended Plan of Liquidation (the **"Plan"**) [main case DE # 224], which was confirmed by Order of this Court on February 5, 2009 [main case DE # 289]. Count III seeks a declaration that the claim held by Robert Duenas (the **"Duenas Claim"**) constitutes Senior Indebtedness and "is senior in priority and dignity to the SunTrust Indenture Judgment." Section 4.03 of the Plan states that in order for a Claim to be an Allowed Unsecured Claim for Senior Indebtedness, the holder of such a Claim must "timely commence a Senior Indebtedness Subordination Proceeding within 15 days of the Effective Date…" As stated in the Notice of Effective Date of the Debtor's First Amended Plan of Liquidation [DE # 293], the Plan went

14

Effective on February 27, 2009.  Thus, in order to be "timely," any Senior Indebtedness Subordination Proceeding, including the relief sought by way of Count III, was required to have been commenced by March 16, 2009.

Plaintiffs timely filed the Original Complaint; however, the Original Complaint did not contain the Duenas Claim.  Instead, the Duenas Claim was added upon the filing of the Amended Complaint on April 10, 2009 -- nearly one month after the deadline within which to timely commence the Duenas Claim.  Of critical importance here, an amended complaint relates back to commencement of the action only "if the amendment merely explains, expands or amplifies what was alleged in support of the cause of action already asserted.  *Clemons v. Cutler Ridge Automotive, LLC*, 2008 WL 879324 at *4 (S.D. Fla. 2008).  Moreover, "an amendment that alleges a new cause of action different from that asserted in the original complaint will not relate back to the date of the original complaint but will be governed by its own date with respect to the applicable statute of limitations."  *Id*.

Here, the Duenas Claim does not explain or expand upon what was alleged in Counts I and II in the Original Complaint.  Instead, the Duenas Claim asserts a newly filed cause of action and cannot relate back to the date of the Original Complaint.  Since the Amended Complaint was filed on April 10, 2009, all counts newly alleged in the Amended Complaint fall outside the 15-day period subsequent to the Effective Date within which a Subordination Proceeding must be commenced.  Section 4.03(b) of the Plan clearly states that "[f]ailure of any Holder of a Class 3 Claim to timely File a Senior Indebtedness Proceeding shall forever bar such Holder from asserting that it is entitled to a Distribution as a Class 3 Claim."  Because the entirely new Duenas Claim was filed more than 15 days after the Effective Date, it is untimely and should be dismissed and forever barred.

Because it is a newly-asserted claim, Plaintiffs' argument that the Duenas Claim "relates back" to the date of filing of the Original Complaint pursuant to Fed.R.Civ.P. 15(c)(1)(C) must fail. See Response, p. 9-10. Contrary to Plaintiffs' argument in the Response, the new Count III allegations in the Amended Complaint do not "explain, expand or amplify" what was alleged in the Original Complaint. *Clemons,* 2008 WL 879324 at *4. This is due to the fact that there was no allegation related to the Duenas Claim or the director fee that serves as the basis for the Duenas Claim in the Original Complaint. Rather, the only claims seeking treatment as Senior Indebtedness in the Original Complaint were the guaranty fee claims, arising out of the 1991 and 1992 guaranties provided by the insiders in favor of Sun Bank. By contrast, the new Count III (which references a new Exhibit C) seeks a determination that a director fee that ACC agreed to pay Duenas in 1994 constitutes Senior Indebtedness. Simply put, this alleged director fee has no connection to the guaranty fee claims that were alleged in the Original Complaint and that serve as the basis for the relief requested in Count I in both the Original Complaint and the Amended Complaint. As such, the Duenas Claim cannot relate back to the Original Complaint and is therefore untimely.

The confirmed Plan in this case contained a deadline within which any Senior Indebtedness Subordination Proceeding must be commenced. Since the Duenas Claim was filed after the deadline set by the confirmed Plan, it is barred and must be dismissed as untimely. *Accord In re New River Shipyard, Inc.*, 355 B.R. 894, 912 (Bankr. S.D. Fla. 2006) (holding that a confirmed plan is *res judicata* as to all claims that could have been filed prior to the confirmation). Accordingly, it is

ORDERED AND ADJUDGED that the Amended Complaint is DISMISSED with prejudice.

###

16

Submitted by:


John B. Hutton, Esq.
Greenberg Traurig, P.A.
1221 Brickell Avenue
Miami, FL 33131
huttonj@gtlaw.com

Copies furnished to:

John B. Hutton, Esq.

Geoffrey Aaronson, Esq.

(Attorney Hutton is hereby directed to serve a copy of this Order upon all parties in interest and to file a certificate of service of same.)